MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 143
Docket:       And-14-444
Argued:       May 14, 2015
Decided:      November 10, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

GERARD BRADY

v.

CUMBERLAND COUNTY

HJELM, J.

[¶1]  Gerard Brady appeals from a summary judgment entered by the Superior Court (Androscoggin County, *Mills, J.*) in favor of Cumberland County on Brady's claim for employment retaliation pursuant to the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2014).  Brady contends that the court erred when it concluded that he failed to present a prima facie case of retaliation because he had not produced evidence that disciplinary action taken against him was motivated by complaints he made about the investigation of an incident at the Cumberland County jail.  Because the record on summary judgment contains evidence on which a jury could reasonably find that the adverse employment action taken against him by the County was substantially motivated at least in part by retaliatory intent, and because we now conclude that the compartmentalized three-step process set out in *McDonnell Douglas Corp. v.*

2

*Green*, 411 U.S. 792, 802-05 (1973), is not an appropriate tool to adjudicate summary judgment motions in WPA retaliation cases, we vacate the judgment.

## I. BACKGROUND

[¶2] The summary judgment record contains the following evidence seen in the light most favorable to Brady as the non-moving party. *See Angell v. Hallee*, 2014 ME 72, ¶ 16, 92 A.3d 1154. Brady has been a detective with the Cumberland County Sheriff's Department's Criminal Investigation Division (CID) since 1994. In late 2002 or early 2003, Brady became licensed to conduct polygraph examinations in Maine. In addition to conducting polygraph examinations in the course of his duties at the Sheriff's Department, Brady started a private polygraph examination company called Forensic Polygraph Services (FPS). He signed a written agreement with the Sheriff's Department that allowed him to conduct the private polygraph business outside of work hours as long as he complied with certain conditions, including not using his County vehicle or other County-owned equipment in connection with FPS.

[¶3] In May 2010, a court officer showed Brady and another detective "a video of an inmate being choked out" by a Cumberland County corrections officer at the Cumberland County Jail. Brady was "very surprised" that a corrections officer would use a chokehold, and he commented to the others watching the video with him that "it looks like somebody is going to jail." Approximately two weeks

later, Brady brought up the video again in a CID meeting, questioning why nothing had been done about the corrections officer's actions and why the matter had not been referred to CID for investigation. His supervisors, Lieutenant Donald Foss and Sergeant James Estabrook, were present at the meeting, and Foss told Brady that the Department's Internal Affairs Division was conducting an investigation.

[¶4] Following the meeting, Brady continued to voice concerns about the incident to his coworkers, and within a week of the meeting, he raised the issue again with Estabrook. Brady believed that the Sheriff's Department was covering up the corrections officer's actions because of the upcoming election for Sheriff. For the most part, Brady did not recall to whom specifically he voiced that theory, but he did remember telling Detective Brian Ackerman that he thought the Department was not investigating the assault because of the election. Brady described Ackerman's response as "something to the effect of you should keep your mouth shut or you're going to get in trouble." Brady also spoke with Lieutenant Joel Barnes, who is in charge of internal affairs investigations for the Department, to discuss the incident and why a criminal investigation had not been opened. Brady did not recall ever speaking to Sheriff Mark Dion, then-Chief Deputy Sheriff Kevin Joyce,[1] or Chief Deputy Sheriff Naldo Gagnon about his

---

[1]  Joyce was elected Sheriff in November 2010 and became Sheriff in January 2011. Prior to becoming Sheriff, Joyce was Chief Deputy to Sheriff Mark Dion. When Joyce was elected Sheriff,

4

concerns. Brady does not recall making any complaints about the incident after approximately July 2010.

[¶5] Prior to 2011, Brady had annually reported his polygraph examination statistics to the Department, including the number of examinations he conducted both for the County and as part of his private business. In late 2010, however, after receiving Brady's statistics for that year, Foss told Brady that, going forward, he only wanted him to report the number of examinations that he conducted for the County. In accordance with that directive, at the end of 2011 Brady submitted only his County polygraph statistics, resulting in a significantly lower number of examinations than he had reported in previous years. Foss noticed the decrease in the number of Brady's reported examinations and told Estabrook about the low numbers. Foss and Estabrook then met with Gagnon and Joyce, leading to further scrutiny of Brady's use of County time and resources to conduct polygraph examinations for FPS. On February 8, 2012, Joyce placed Brady on administrative leave and directed that Foss commence a criminal investigation into whether Brady had violated the law by using County resources to conduct his private business.

[¶6] At the conclusion of the investigation, Foss determined that on at least one occasion Brady had used a County vehicle to deliver polygraph results to an

Gagnon became his Chief Deputy. The events that are relevant to this case occurred when Dion was Sheriff and Joyce was his Chief Deputy.

FPS client and that Brady administered a private polygraph examination on a day when he had called in sick. He also found that Brady had used his "unmanaged comp time" to conduct polygraph examinations for FPS while being paid by the County.[2] Foss concluded, however, that these departmental policy violations did not amount to probable cause to charge Brady with a crime. Despite that recommendation, Joyce directed that the case be referred to the District Attorney's office for review and possible criminal prosecution. After reviewing the case and seeking input from the Attorney General's office, the District Attorney declined to prosecute Brady. Joyce also submitted Brady's case to the Maine Criminal Justice Academy for review of Brady's law enforcement officer certification, but the Academy declined to take any action.

[¶7] Joyce then directed Barnes, who conducts all of the Cumberland County Sheriff's Department's internal affairs investigations, to conduct an investigation into whether Brady violated any Department policies. Barnes determined that Brady had violated his written agreement with the Sheriff's Department and also had funneled revenue away from the County by failing to notify other law enforcement agencies that the Sheriff's Department could perform

---

[2] Unmanaged comp time was an informal practice at the Sheriff's Department whereby salaried employees who worked extra hours on nights or weekends then would take time off during the workday to compensate for the extra time worked. Brady testified that he received permission to take unmanaged comp time from his supervisors, but that he did not inform them he was using that time to conduct polygraph examinations.

polygraph examinations at a lower cost than FPS, but Barnes also concluded that Brady's conduct was not criminal. Following a disciplinary hearing where Brady was represented by a union agent and an attorney, Joyce demoted Brady to the position of patrol officer.

[¶8] Brady challenged the demotion through the union grievance process, and in March 2013, an arbitration hearing was held. On May 3, 2013, the arbitrator issued an award, finding that the County had just cause to discipline Brady but ordering that he be reinstated to his detective position with back pay. On May 23, 2013, the County terminated Brady's employment because he had been on medical leave for more than a year. The same arbitrator reversed that decision, finding that "at least a portion of the year he was absent . . . may not have occurred but for the behavior of the County," and extending the time within which Brady was required to submit medical documentation supporting his fitness to return to duty. Brady returned to work in late August 2013.

[¶9] Brady filed a complaint with the Maine Human Rights Commission in September 2012. After receiving a right-to-sue letter in April 2014, *see* 5 M.R.S. § 4612(6) (2014), he filed a complaint against the County in the Superior Court (Androscoggin County) for (1) violation of the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831-840; (2) violation of the Maine Civil Rights Act, 5 M.R.S. §§ 4681-4685 (2014); (3) defamation; and (4) interference with advantageous

relationship. He also filed a complaint against Joyce and Gagnon in Superior Court (Cumberland County) with the same claims except for the WPA claim. The two actions were consolidated in Androscoggin County. The defendants moved for summary judgment, and, on October 6, 2014, the court granted the motion, entering judgment for all defendants on all counts. Brady timely appealed, challenging the order granting summary judgment on his WPA claim against the County.[3]

## II. DISCUSSION

[¶10] "We review the grant of a motion for summary judgment de novo," viewing the evidence "in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484 (quotation marks omitted). "A genuine issue of material fact exists when the factfinder must choose between competing versions of the truth." *Dyer v. Dept. of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quotation marks omitted).

[¶11] In our previous WPA retaliation cases, we applied the three-step burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See, e.g., Trott v. H.D. Goodall Hosp.*, 2013 ME 33,

---

[3] Brady has not appealed the summary judgment issued in favor of Joyce and Gagnon, or the summary judgment issued in favor of the County on the remaining counts of his complaint against the County.

8

¶ 15, 66 A.3d 7 (applying the *McDonnell Douglas* burden-shifting analysis to a summary judgment motion); *DiCentes v. Michaud*, 1998 ME 227, ¶¶ 14-17, 719 A.2d 509 (applying the *McDonnell Douglas* burden-shifting analysis to the trial context). Pursuant to that analysis, the employee must first produce evidence sufficient to generate a prima facie case of retaliation. *Trott*, 2013 ME 33, ¶ 15, 66 A.3d 7. Then, the burden of production shifts to the employer to present evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Once the employer has done so, "the burden shifts back to the employee to produce evidence that the employer's proffered reason is a pretext to conceal an unlawful reason for the adverse employment action." *Id.*

[¶12] Brady contends that the court erred when it concluded that he had not established a prima facie case of retaliation because he had not produced evidence of a causal link between his complaints and the disciplinary action taken against him. The County contends that the court did not err, but that, even if Brady has made out a prima facie case, the County is still entitled to summary judgment because Brady has not produced evidence that the reason given by the County for the disciplinary action was pretextual. In response, Brady argues that in the context of summary judgment motion practice for retaliation cases, we should dispense with the particularized *McDonnell Douglas* burden-shifting framework and instead use the more general standard that allows a case to proceed if the

plaintiff has succeeded in generating a dispute of material fact as to each element of the cause of action. *See* M.R. Civ. P. 56(c).

[¶13] We therefore must address two questions on this appeal: (1) whether Brady has succeeded in establishing a prima facie case of retaliation; and (2) if he has, whether, when analyzing a WPA retaliation claim in the summary judgment context, there is a justification for continuing to use the burden-shifting framework prescribed by *McDonnell Douglas*. We conclude that the record on summary judgment is sufficient to establish Brady's prima facie case of retaliation. We further conclude that, by itself, an employee's production of evidence to support a prima facie case of WPA retaliation is sufficient to defeat an employer's motion for summary judgment, without the need to shift the burden of production pursuant to the second and third steps of the *McDonnell Douglas* analysis. We address these issues separately.

A.    Prima facie case

[¶14] As a general matter, to make out a case of unlawful retaliation under Maine's WPA and thereby satisfy the first step in the *McDonnell Douglas* approach, a plaintiff must show that "(1) [he] engaged in activity protected by the WPA; (2) [he] experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Walsh*, 2011 ME 99, ¶ 24, 28 A.3d 610; *see* 26 M.R.S. § 833 (2014).

These elements therefore collectively constitute a prima facie case for purposes of the summary judgment analysis. *Fuhrmann v. Staples Office Superstore East, Inc.*, 2012 ME 135, ¶ 15, 58 A.3d 1083. *Cf. Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 7, 742 A.2d 933 ("To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial would be sufficient to resist a motion for a judgment as a matter of law." (quotation marks omitted)). In the context of the summary judgment analysis, the employee's burden of proving a prima facie case of retaliation is "relatively light," *Murray v. Kindred Nursing Ctrs. W. LLC*, No. 2:13-cv-00341-JDL, 2014 U.S. Dist. LEXIS 124776, at \*21 (D. Me. Sept. 8, 2014) (quotation marks omitted), and requires only "a small showing that is not onerous and is easily made," *Boyd v. England*, 393 F. Supp. 2d 58, 62 (D. Me. 2005) (quotation marks omitted).

[¶15] Here, the trial court determined that Brady produced evidence that he had engaged in a protected activity, namely, complaining about the County's failure to respond appropriately to the alleged assault in the jail. The court also determined that Brady had presented evidence that he suffered an adverse employment action, namely being demoted. The court concluded, however, that Brady failed to create a triable issue of fact that there was a causal connection between his protected activity and the adverse employment action taken by the County. Brady contends that this conclusion was erroneous and that the record on

summary judgment contains sufficient circumstantial evidence of causation to allow him to meet his burden of production at the prima facie stage.

[¶16]   A causal connection exists when the alleged retaliation "was a substantial, even though perhaps not the only, factor motivating" the adverse employment action.  *See Fuhrmann*, 2012 ME 135, ¶ 21, 58 A.3d 1083 (quotation marks omitted).   When considering whether a plaintiff has produced evidence sufficient to establish a prima facie case of causation, the court may consider any and all evidence that tends to show a causal link, even if that evidence would also be relevant to show pretext at the third stage of the *McDonnell Douglas* framework.  *Id*. ¶¶ 16, 19 (considering the same evidence at both the prima facie and pretext stages of the *McDonnell Douglas* analysis); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000) ("[N]othing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other.").   In other words, pretext evidence can also serve as causation evidence that bears on a plaintiff's prima facie case.  We therefore consider all of the evidence produced by Brady and determine whether, cumulatively, it would allow a reasonable jury to infer that he was disciplined in part due to his protected activity.

[¶17]   We conclude that Brady has produced evidence demonstrating the existence of a dispute of material fact on the causation element of his prima facie

12

case. Brady has met his burden of production here because of the combined effect of evidence of (1) differential treatment of Brady in the workplace, from which a reasonable jury could find that he was singled out and disciplined for violations that were commonplace in the Department but did not lead to discipline against other employees; (2) a disproportionate response to Brady's alleged violation, as measured by the results of the initial investigation into Brady's alleged wrongdoing; and (3) communication channels involving the subject of Brady's protected complaints that would naturally allow those complaints to reach the decision-makers. We consider these categories of evidence in turn.

[¶18] First, Brady has produced evidence that he was treated differently than other detectives at the Sheriff's Department. The record supports the trial court's statement that the County "acknowledge[d] that many Sheriff's Department employees have used unmanaged comp time for personal reasons such as running errands, attending ballgames, and drinking alcohol," yet they have never been criminally investigated for their use of that time. Additionally, Brady produced evidence that other detectives and higher ranking officers in the Sheriff's Department used County vehicles to conduct personal business (although not income-producing activity), including going to baseball games and bars, and were never disciplined for it. The summary judgment record includes evidence that Joyce was "aware of" one instance where a lieutenant in the Department drove

from Portland to Logan Airport in Boston in a County vehicle to deliver a passport that a commander embarking on a personal international trip had left behind at his house.

[¶19] From this evidence, a jury could reasonably infer that the Department had at least an ad hoc standard of tolerance toward the violation of policies regarding employee leave and use of County resources, where many infractions did not lead to investigations, much less employee discipline. On this basis, a reasonable jury could then conclude that even though Brady's violation of internal policies was arguably comparable to violations committed by other County employees, he was subjected to an unusual response from the County and was singled out because of his prior complaints.[4] *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (stating that "evidence of differential treatment in the workplace" is a type of circumstantial evidence that "can demonstrate retaliation in a way sufficient to leap the summary judgment or directed verdict hurdles"); *Osher v. Univ. of Me. Sys.*, 703 F. Supp. 2d 51, 68 (D. Me. 2010)

---

[4] While we recognize that unlike the other employees conducting personal business, Brady was engaged in income-producing activity, it is the province of the jury to determine whether the actions taken against Brady constituted a disproportionate and retaliatory response.

14

(stating that circumstantial evidence of causation may include "evidence of differential treatment in the workplace" (quotation marks omitted)).[5]

[¶20]  Second, although a jury could find it to be less compelling, Brady has produced evidence that the actions taken against him may have been unreasonably disproportionate to the violations that he committed.  Foss's initial investigation concluded that there was no probable cause to charge Brady with a crime, an assessment that was shared by Barnes, who conducted the internal affairs investigation.  Nonetheless, Joyce referred the case to the District Attorney's office for possible prosecution.  Joyce also referred the case for review by the Maine Criminal Justice Academy, even though such a review may not have been required.[6]  Finally, Joyce demoted Brady to the position of patrol officer, a punishment that an arbitrator later found to be too harsh for the violations that Brady committed.  Although a reasonable jury could agree with Joyce's contentions that these actions were taken in order to ensure a thorough review of Brady's case, a reasonable jury could alternatively find that they were

---

[5]  Federal jurisprudence addressing employment retaliation claims carries weight because "[o]ur construction of the . . . WPA has been guided by federal law."  *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 13, 915 A.2d 400.

[6]  Cumberland County asserts that it was required by statute to refer the case to the Maine Criminal Justice Academy.  *See* 25 M.R.S. § 2807 (2012) (Section 2807 was amended in 2013 in respects that are not pertinent here.  *See* 2013 P.L., ch. 147, § 40 (codified at 25 M.R.S. § 2807 (2014))).  The statute, however, merely requires that criminal convictions and other serious misconduct, which may not include policy violations of the type committed by Brady, be reported to the Academy.  *See* 25 M.R.S. §§ 2806-A, 2807 (2014).

disproportionate in relation to Brady's violations of internal policies, particularly when others who were generally similarly situated were not investigated or disciplined, and that, when viewed along with the other evidence favorable to Brady, Joyce was motivated to impose discipline on Brady in response to his complaints. *See Kirouac v. Donahoe*, No. 2:11-cv-00423-JAW, 2013 U.S. Dist. LEXIS 82349, at *136 (D. Me. June 11, 2013) (finding that a reasonable juror could have inferred that a supervisor's "target[ing]" of the plaintiff for "harsher enforcement" of rules was evidence of causation).

[¶21] Third, on this record, although there was no direct evidence that Joyce knew about Brady's complaints, a reasonable jury could attribute Joyce's alleged disproportionate response to a retaliatory motivation because it could infer that Joyce had learned of Brady's complaints. At the time Brady made his complaints, Joyce was chief deputy sheriff, and Lieutenant Foss and Lieutenant Barnes both reported to him. In particular, a jury could find that Barnes, as the lieutenant in charge of internal affairs investigations, would have communicated with Joyce about the internal affairs investigation into the very incident about which Brady complained. Brady complained to both Barnes and Foss about the Department's lack of response to the incident. A reasonable jury could conclude that at least one of them would have mentioned Brady's complaints to Joyce as part of the same matter about which Barnes reported directly to Joyce.

[¶22]  Based on this cumulative evidence, Brady has generated sufficient evidence to allow a jury to determine whether the adverse employment action that the County took against Brady was substantially motivated at least in part by his protected activity.

[¶23]  In its order granting the County's motion for summary judgment, the trial court considered the gap in time between when Brady complained about the prisoner assault incident in May 2010 and when he was placed on paid administrative leave and investigated in early 2012, concluding that "[t]he timing of events in this case is plaintiff's greatest obstacle to demonstrating a prima facie case."  It is true that "[t]emporal proximity . . . may serve as the causal link for purposes of a prima facie case" by supporting an inference of causation.  *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 21, 45 A.3d 722.  The inverse, however, is not true: the *lack* of temporal proximity, although potentially persuasive, is not dispositive, and in the context of a summary judgment motion it does not compromise a plaintiff's prima facie case.  *See Murphy v. United States Dep't of Veterans Affairs*, No. 1:12-cv-379-DBH, 2013 U.S. Dist. LEXIS 119869, at *20 (D. Me. Aug. 23, 2013) (stating that "the lapse of time alone is not a basis for summary judgment").  At trial, the fact-finder would be entitled to find that the passing of a significant amount of time between an employee's protected activity and subsequent adverse employment action diminishes the likelihood that the two

were causally connected. A jury, in other words, may reject an employee's contention that the employer was merely lying in wait. That, however, is a question of how much weight to assign to the evidence, which is necessarily a determination that can be made only at trial. Thus, even though a significant period of time elapsed between Brady's complaints and his demotion, on a motion for summary judgment the lack of temporal proximity is not, as a matter of law, a dispositive factor. Instead, Brady has the burden of producing some evidence from which a reasonable jury could find a causal link—a burden that he has met here.

[¶24] We therefore conclude that, even without the evidentiary benefit of temporal proximity, Brady has produced sufficient circumstantial evidence to generate a triable claim of a causal relationship, and, in combination with evidence of protected activity and adverse employment action, he therefore has made out a prima facie case of retaliation in the workplace.

B.     Application of *McDonnell Douglas* to WPA Claims

[¶25] The County contends that, even if Brady succeeded in making out a prima facie case, it is entitled to summary judgment pursuant to the *McDonnell Douglas* framework because Brady has not produced sufficient evidence that the County's proffered non-retaliatory reason for disciplining him was pretextual. Brady contends that the *McDonnell Douglas* framework lacks utility for deciding motions for summary judgment in WPA retaliation cases and that we should no

longer apply that approach in this context. We agree and conclude that in a summary judgment motion in a WPA retaliation case, it is unnecessary to shift the burden of production pursuant to *McDonnell Douglas* once the plaintiff—as she must do to present a prima facie case—has presented the requisite evidence that the adverse employment action was motivated at least in part by retaliatory intent. In analyzing this issue, we first consider the origins and purpose of the *McDonnell Douglas* analysis. We then evaluate the suitability of applying that analysis to WPA cases governed by Maine law.

1. *McDonnell Douglas*

[¶26] The *McDonnell Douglas* case addressed the parties' burdens of production at trial, rather than on summary judgment, for racial discrimination claims brought under Title VII of the Civil Rights Act of 1964. *See McDonnell Douglas Corp.*, 411 U.S. at 797. Under that analysis, in order to establish a prima facie case, the plaintiff need only show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802.

[¶27] *McDonnell Douglas* was intended to create a procedure that was thought to be favorable to plaintiffs in Title VII cases who face difficulty in

presenting evidence of the employer's discriminatory animus. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1224 (10th Cir. 2003) (Hartz, J., concurring). That difficulty is both foreseeable and understandable because of the challenges inherent in proving an employer's discriminatory intent. *Trans World Airlines*, 469 U.S. at 121 ("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the [employee] has his day in court despite the unavailability of direct evidence." (quotation marks omitted)); *Lapsley v. Columbia Univ.—Coll. of Physicians & Surgeons*, 999 F. Supp. 506, 514 (S.D.N.Y. 1998). The *McDonnell Douglas* framework constitutes "an information-forcing device by requiring employers to explain arguably suspicious activity." *Lapsley*, 999 F. Supp. at 514. Therefore, in the first step of the *McDonnell Douglas* three-step process, the four elements of a Title VII prima facie case do not include a requirement that the plaintiff produce evidence of unlawful motivation. Rather, presentation of a prima facie case as defined in *McDonnell Douglas* merely "raises an inference of discrimination only because we presume these acts, *if otherwise unexplained*, are more likely than not based on the consideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (emphasis added).

[¶28]  The standard for a prima facie case created in *McDonnell Douglas* is therefore limited in its effect: it creates a "legally mandatory, rebuttable presumption," *Burdine*, 450 U.S. at 254 n.7, but it falls short of a body of evidence that would be sufficient to permit a finder of fact to conclude that the employer acted unlawfully.  *See id*.  In this way, a "prima facie case" within the meaning of the *McDonnell Douglas* analysis is different than a "prima facie case" that more generally describes a collection of evidence that is sufficient to withstand a motion for summary judgment.  *See, e.g., Budge*, 2012 ME 122, ¶ 12, 55 A.3d 484 (referring to the plaintiff's burden to produce evidence of a prima facie case for each element of a claim to defeat a motion for summary judgment).

[¶29]  Under *McDonnell Douglas*, if the employee succeeds in presenting evidence of a prima facie case, the burden of production then shifts to the employer to articulate the explanation for the adverse employment action—in other words, to produce evidence of an explanation that will cause the disappearance of the initial "inference of discrimination," which arose only because of the absence of a legitimate explanation, and then "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255.  Under the *McDonnell Douglas* framework as applied to a summary judgment motion, it is only at this point that the employee must point to evidence in the record on summary judgment that would allow a reasonable jury to conclude that the employer's conduct was motivated at least in

part by unlawful considerations, thereby creating a triable issue about the employer's proffered explanation. The employee is not called on to present evidence of causation unless and until the employer raises the issue by presenting some evidence of a legitimate, non-discriminatory reason for its actions.

[¶30] In most cases, the employer will counter the employee's evidence of retaliatory intent by producing evidence that it acted for legitimate, non-retaliatory reasons.[7] *Brady v. Office of the Sergeant at Arms*, 520 F.3d. 490, 493 (D.C. Cir. 2008); *Lapsley*, 999 F. Supp. at 514 ("Of course, the employer in every case will articulate a nondiscriminatory reason for its action."). This has the effect of negating the "inference of discrimination," because the employer's actions are no longer unexplained. Therefore, under *McDonnell Douglas*, the real battleground in summary judgment motions is in the application of the third step, where a court is called to examine whether the employee has presented evidence responsive to the employer's articulation of a legitimate, non-discriminatory reason for the action it took against the employee. *Brady*, 520 F.3d at 494; *Lapsley*, 999 F. Supp. at 514 (observing that as *McDonnell Douglas* is often applied, "[t]he first two steps, for all practical purposes, have fallen out of the equation"). Although *McDonnell Douglas* created a compartmentalized analysis with internal

---

[7] If the employer does not present evidence of such a non-retaliatory motive, then the employee may become entitled to a summary judgment based on evidence in a prima facie case that is not placed in material dispute by the employer.

22

shifting burdens of production, courts applying that process have recognized that in the specific context of summary judgment motions, the ultimate question really is whether the record on summary judgment contains evidence that the adverse employment action taken against an employee was motivated at least in part by unlawful considerations.[8] *Brady*, 520 F.3d at 494; *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, No. 96-7523, 1997 U.S. App. LEXIS 19794, at \*10 (2d Cir. May 23, 1997); *Peterson v. City Coll.*, 32 F. Supp. 2d 675, 683 (S.D.N.Y. 1999).  This is the issue that is addressed in the third step of the *McDonnell Douglass* process.

[¶31]  With this understanding of the reasons underlying the development and application of the *McDonnell Douglas* process, we now examine its suitability to a motion for summary judgment filed in a WPA retaliation action under Maine law.

---

[8] While federal courts remain bound to follow the *McDonnell Douglas* jurisprudence, some have not been reticent to express critical views about the doctrine and its ongoing usefulness. *See, e.g., Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that the formulation of the prima facie case is "a largely unnecessary sideshow . . . spawning enormous confusion and wasting litigant and judicial resources"); *Wells v. Colorado Dep't. of Transp.*, 325 F.3d 1205, 1221, 1224 (10th Cir. 2003) (Hartz, J., concurring) (stating that *McDonnell Douglas* has created "wasted judicial effort and greater opportunity for judicial error" and that it causes courts to "focus on the isolated components of the *McDonnell Douglas* framework, losing sight of the ultimate issue"); *Peterson v. City Coll.*, 32 F. Supp. 2d 675, 683 (S.D.N.Y. 1999) (describing the *McDonnell Douglas* model as "confusing and unworkable"); *Lapsley v. Columbia Univ.—Coll. of Physicians & Surgeons*, 999 F. Supp. 506, 514 (S.D.N.Y. 1998) (noting a "legion" of criticisms of the "cumbersome" doctrine and quoting characterizations by courts and commentators as a "'yo-yo rule,' 'befuddling,' 'replete with confusion,' and 'incomprehensible'").

2.    WPA Claims

[¶32]  Under Maine law, the cause of action for whistleblower retaliation consists of three elements: (1) that the employee engaged in a protected activity; (2) that the employer took adverse employment action against the employee; and (3) that there was a causal connection between the two.  *Walsh*, 2011 ME 99, ¶ 24, 28 A.3d 610.  Therefore, at trial an employee asserting a WPA retaliation claim must present evidence that would allow a fact-finder to reasonably find each of the three elements of the claim.  *Id.*  That standard is the same in assessing an employee's case that is challenged through a motion for summary judgment.  *See Corey*, 1999 ME 196, ¶ 7, 742 A.2d 933.  In both situations, the employee must present evidence that would allow the fact-finder "to rule in the [plaintiff's] favor." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774 (quotation marks omitted).

[¶33]  Because of the way a WPA claim is defined under Maine law, in a summary judgment motion—just as at trial—the employee must not only produce evidence that she engaged in protected activity and later suffered an adverse employment action, but in the first instance she must also produce some evidence of the employer's unlawful motivation.  *Walsh*, 2011 ME 99, ¶ 24, 28 A.3d 610. Without evidence of a causal connection between the protected activity and the adverse employment action, the employee has not presented a prima facie case for

WPA retaliation, and the employer is entitled to summary judgment. Alternatively, if the employee presents evidence of a causal connection between protected activity and adverse employment action, then the employee has created a record sufficient to defeat an employer's motion for summary judgment.

[¶34] This requirement serves to distinguish WPA retaliation cases from Title VII cases. Under *McDonnell Douglas*, the employee with a Title VII claim does not have an obligation to produce evidence of causation—that is, discriminatory animus—until *after* the employer satisfies the second step of the process by producing evidence of a lawful explanation for the adverse employment action. In a WPA case, on the other hand, even before the burden of production would shift to the employer under the *McDonnell Douglas* model, the employee would *already* have been required to present evidence of causation. When an employee has presented evidence of (1) protected activity, (2) an adverse employment action, and (3) a causal relationship between the two, she has already presented a case that would be sufficient to go to a jury, and therefore one that is sufficient to defeat the employer's motion for summary judgment.

[¶35] Once the employee has presented evidence covering the elements of a WPA retaliation claim, the employer's evidence of a lawful reason for the adverse employment action, presented as the second step of the *McDonnell Douglas* analysis, merely creates a dispute of material fact and precludes the court from

granting summary judgment to the employee, because it is evidence that the employer may use to contradict or otherwise call into question the employee's evidence that the employer acted with a retaliatory motivation. In other words, it is evidence presented by the employer to dispute the truth of the employee's evidence of wrongful conduct in the workplace. Similarly, any evidence presented by the employee at the third step of the *McDonnell Douglas* analysis, that the legally benign explanation offered by the employer to explain its action was actually a pretext, does not affect the fact that with her initial showing, she had already presented sufficient evidence for the jury to conclude that the employer's conduct was actionable.

[¶36] Therefore, the second and third phases of the *McDonnell Douglas* model require an analysis that, on a summary judgment motion in a WPA retaliation case, is duplicative. In summary judgment proceedings in WPA retaliation cases, if the employee presents evidence encompassing the three elements of a WPA claim, there is no reason to shift the burdens according to *McDonnell Douglas,* because the evidence that must be produced by the employee in the first instance is by itself sufficient to defeat a motion for summary judgment. *See Farrell,* 206 F.3d at 286; *Henderson v. Jantzen, Inc.,* 719 P.2d 1322, 1324 (Or. Ct. App. 1986) ("A plaintiff's *prima facie* case does not

disappear merely because a defendant asserts a non-discriminatory reason which may or may not persuade the trier of fact.").

[¶37] Elimination of the burden-shifting process does not limit the scope of the evidence presented in summary judgment motion practice in WPA retaliation cases, when compared to the evidence that would be presented under the *McDonnell Douglas* model. With or without the *McDonnell Douglas* burden-shifting process, the question of whether the record on summary judgment contains evidence of causation requires the court to recognize any evidence that the employer had a lawful reason for the adverse action taken against the employee, and any evidence that that proffered reason is merely a pretext. Accordingly, the evidence that would be presented in the second and third stages of the *McDonnell Douglas* framework will still fall within the analytical framework applicable to summary judgment motions in WPA retaliation cases because that evidence still bears on the allegation of causation. Causation is an essential element of a claim of WPA retaliation, and so the parties are entitled to present evidence of the reasons for the employer's action, but without any need to follow the *McDonnell Douglas* burden-shifting structure. Without *McDonnell Douglas*, the court will now consider that evidence in a unitary way and simply determine whether the record as a whole would allow a jury to reasonably

conclude that the adverse employment action was motivated at least in part by retaliatory intent.

[¶38]    Eliminating the burden-shifting analysis set out in *McDonnell Douglas* for WPA retaliation claims is analytically similar to the approach taken by some federal courts in Title VII cases, which are directly governed by that case.  Those courts essentially presume that the employee has presented evidence sufficient to make out a prima facie case and that the employer has articulated a lawful reason for its actions.  They then focus almost exclusively on the question of whether the record could reasonably sustain an argument of causation.  E.g., *Brady*, 530 F.3d at 494; *Lapsley*, 999 F. Supp. at 514-15.  Thus, that approach functionally diminishes the first two steps of *McDonnell Douglas* almost to the point of invisibility, thereby eliminating the burden-shifting exercise, and instead proceeds directly to the question of causation.  The effect of that approach is the same as we prescribe here, which is to examine the record as a whole to determine simply whether the employee has presented evidence that could support a finding that the adverse employment action was motivated at least in part by protected activity.

[¶39]    For these reasons, we are now convinced that application of the *McDonnell Douglas* framework to the summary judgment stage of WPA retaliation cases, which would shift the burden of production back and forth *after*

the employee had made out a case for retaliation, is unnecessary and only serves to complicate a proper analysis of the employee's claim.[9]  *See Trott*, 2013 ME 33, ¶ 28, 66 A.3d 7 (Silver, J. concurring) (stating that the "rigid and artificial trifurcation of the causation analysis confuses rather than clarifies the ultimate issue in employment discrimination cases: whether there is evidence of discrimination" (quotation marks omitted)).  Instead, we hold that at the summary judgment stage in WPA retaliation cases, the parties are held to the same standard as in all other cases.  The employer has the burden to "show that there is no genuine issue as to any material fact," M.R. Civ. P. 56(c), and that "the evidence fails to establish a prima facie case for each element of the cause of action," *Budge*, 2012 ME 122, ¶ 12, 55 A.3d 484 (quotation marks omitted).  As part of that process, the employee must produce evidence generating a triable issue on each of those elements.  *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774.  If the evidence in the summary judgment record would allow a jury to find for the

---

[9]  Because this case reaches us on summary judgment, it does not present us with occasion to consider whether the *McDonnell Douglas* burden-shifting structure should still be treated as a useful analytical device at trial.  *Compare Maine Human Rights Comm'n. v. Auburn,* 408 A.2d 1253, 1261 (Me. 1979) ("The special rules developed by the federal courts provide a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." (quotation marks omitted)), *and Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 784 (Tenn. 2010) (approving "the *McDonnell Douglas* framework . . . to permit the trier of fact to better evaluate the evidence as to whether the employer was motivated by a discriminatory or retaliatory intent"), *with Palmquist v. Shinseki*, 689 F.3d 66, 71 (1st Cir. 2012) (indicating that at trial, "the *McDonnell Douglas* framework, with its intricate web of presumptions and burdens, becomes an anachronism").

employee on each element of the employee's case, then the employer is not entitled to summary judgment.

[¶40]  Here, Brady produced evidence sufficient to generate a genuine issue of material fact on each of the three elements of his claim for retaliation, including the element that his demotion was motivated at least in part by retaliation. Accordingly, the County is not entitled to judgment as a matter of law. Determinations of the weight to be given to that evidence, including whether Brady can prove that the County's explanation for the adverse employment action was pretext for a retaliatory motive, are necessarily left for a fact-finder's decision at trial.  For these reasons, we vacate the summary judgment entered in favor of the County and remand for further proceedings.

The entry is:

> Judgment vacated.   Remanded to the Superior Court for further proceedings consistent with this opinion.

**On the briefs:**

Jonathan M. Goodman, Esq., and William K. McKinley, Esq., Troubh Heisler, PA, Portland, for appellant Gerard Brady

Peter T. Marchesi, Esq., and Cassandra S. Shaffer, Esq., Wheeler & Arey, PA, Waterville, for appellee Cumberland County

**At oral argument:**

Jonathan M. Goodman, Esq., for appellant Gerard Brady

Peter T. Marchesi, Esq., for appellee Cumberland County

Androscoggin County Superior Court docket number CV-2013-56
FOR CLERK REFERENCE ONLY