STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-15-129

ROY BUITRAGO,

     Plaintiff,

     v.

CUSTOM HEARING, LLC d/b/a
MIRACLE EAR, LLC and
FRASIER ENTERPRISES,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

STATE OF MAINE
Cumberland ss. Clerk's Office

JUL 06 2016

RECEIVED

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Custom Hearing, LLC (d/b/a Miracle Ear, LLC) and Frasier Enterprises have moved for summary judgment on Plaintiff Roy Buitrago's claim for unlawful retaliation pursuant to the Maine Human Rights Act ("MHRA") and the Maine Whistleblower's Protection Act ("WPA"). The court elects to decide the motion without oral argument.

Based on the entire record, Defendants' motion for summary judgment is denied.

### I. Background

The following facts are established for purposes of the Defendants' motion for summary judgment.

Defendant Custom Hearing, LLC (d/b/a Miracle Ear, LLC) is in the business of dispensing, fitting, and selling hearing aids from a number of locations in Maine, including a store in South Portland.[1] (Defs. Supp. S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) Carl Case is an employee of Custom Hearing, LLC who manages the South Portland store remotely from

---

[1] Plaintiff's second amended complaint alleges that Defendant Frasier Enterprises is the parent company of Custom Hearing, LLC. Plaintiff further alleges that Frasier Enterprises and Custom Hearing, LLC are engaged in an integrated enterprise and were joint employers of Plaintiff. (2d Am. Compl. ¶ 3.) Defendants deny these allegations. (2d Am. Ans. ¶ 3.) However, their summary judgment motion does not put these matters into contention.

1

Johnstown, New York. (Pl. Add'l S.M.F. ¶¶ 5-6; Defs. Reply S.M.F. ¶¶ 5-6.) Shawn MacDonald is a licensed hearing aid dispenser who at relevant times oversaw the daily operations of the South Portland store. (Defs. Supp. S.M.F. ¶ 2; Pl. Opp. S.M.F. ¶ 2.) Nancy MacDonald, Mr. Mac Donald's wife, was the office assistant for the South Portland store. (*Id.* ¶ 3.)

Plaintiff Roy Buitrago began working at the South Portland store as a "trainee" in January 2014. (Pl. Add'l S.M.F. ¶ 9; Defs. Reply S.M.F. ¶ 9.) Mr. Case made the decision to hire Plaintiff. (*Id.* ¶ 8.) The Maine Board of Speech Audiology and Hearing ("BSAH") oversees the licensing of hearing aid dealers and fitters in Maine, including Custom Hearing, LLC. (*Id.* ¶ 12.) Under BSAH regulations, trainees are allowed to test, fit, and assist with hearing aids only under the supervision of another licensed individual. (*Id.* ¶¶ 22-23, 27.) Plaintiff was training under the license of Mr. MacDonald. (*Id.* ¶ 29.) Plaintiff could not sell or service any hearing aids without Mr. MacDonald present. (*Id.* ¶¶ 20, 24.) Mr. MacDonald was to provide Plaintiff with training and maintain a training log as part of Plaintiff's application for licensure as a hearing aid dealer and fitter. (*Id.* ¶ 16.)

However, Mr. MacDonald only worked at the South Portland store three days per week. (*Id.* ¶ 32.) Mr. MacDonald would work at other locations in Maine on other weekdays. (*Id.* ¶ 33.) Plaintiff alleges that Mr. MacDonald never oversaw Plaintiff's treatment of customers and that he would service customers' hearing aids without Mr. MacDonald present. (Pl. Add'l S.M.F. ¶¶ 35-36.)

In May 2014, Plaintiff complained to Ms. MacDonald regarding his lack of training and Mr. MacDonald's failure to supervise his training. (Pl. Add'l S.M.F. ¶¶ 46-47; Defs. Reply S.M.F. ¶¶ 46-47.) About a week later, Plaintiff spoke to Mr. MacDonald. (*Id.* ¶ 62.) Plaintiff told Mr. MacDonald that he needed supervision, that he would no longer dispense hearing aids

2

without Mr. MacDonald present, and that he should not be selling hearing instruments or making adjustments with Mr. MacDonald present. (*Id.* ¶¶ 64-65.)

On May 29, 2014, Mr. MacDonald met with Plaintiff and informed him that his employment had been terminated. (*Id.* ¶ 73.) Defendants assert that Mr. Case made the decision to terminate Plaintiff because he was not making sales at expected levels. (Defs. Supp. S.M.F. ¶¶ 32-33.)

On March 27, 2015, Plaintiff filed a one-count complaint for unlawful retaliation pursuant to the MHRA and the WPA. Plaintiff subsequently filed an amended complaint on May 21, 2015, and a second amended complaint on November 19, 2015. Defendants moved for summary judgment on February 29, 2016. After an enlargement of time, Plaintiff filed its opposition on April 8, 2016. Defendants filed their reply on April 22, 2016.

## II. *Analysis*

### A.  Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the [fact finder] must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

In WPA retaliation cases, Maine courts have applied the three-step, burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 11, 126 A.3d 1145. Under the *McDonnell Douglas* burden-shifting

framework, the employee must first produce sufficient evidence of a prima facie case of retaliation. *Id.* The burden then shifts to the employer to produce evidence of "a legitimate, non-retaliatory reason for the adverse employment action." *Id.* The burden then shifts back to the employee to produce evidence that the employer's proffered reason is a pretext to conceal unlawful retaliation against the employee. *Id.*

However, the Law Court has recently held that the *McDonnell Douglas* burden-shifting analysis is no longer applicable to motions for summary judgment in WPA cases. *Id.* ¶ 39. Thus, as in other cases, when a defendant-employer moves for summary judgment on an employee's claim for retaliation, the employer has the burden of demonstrating that there is no genuine issue as to any material fact and that the evidence fails to establish a prima facie case for each element of the cause of action. *Brady*, 2015 ME 143, ¶ 39, 126 A.3d 1145; M.R. Civ. P. 56(c). The burden then shifts to the plaintiff-employee to generate an issue of material fact for each element of the claim for retaliation. *See Brady*, 2015 ME 143, ¶ 39, 126 A.3d 1145; M.R. Civ. P. 56(e). The elimination of the burden-shifting analysis does not limit the scope of the evidence that the court may consider on a motion for summary judgment in a WPA case; the court may still consider any evidence it would have previously considered at the second and third stages of the burden-shifting in determining whether there are genuine issues of material fact. *Brady*, 2015 ME 143, ¶ 37, 126 A.3d 1145.

On summary judgment, the employee's burden of establishing a prima facie case of retaliation is "relatively light." *Brady*, 2015 ME 143, ¶ 14, 126 A.3d 1145 (internal citation omitted). The plaintiff-employee need only proffer evidence that a factfinder could accept as sufficient to prove that (1) the employee engaged in a protected activity under the WPA; (2) the employee experienced an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.*

4

Of these elements, only the first and third enumerated are at issue in this case. In their motion for summary judgment, Defendants do not assert that Plaintiff has not experienced an adverse employment action. It is undisputed that Plaintiff's employment was terminated on May 29, 2014. (Pl. Add'l S.M.F. ¶ 73; Defs. Reply S.M.F. ¶ 73.) However, Defendants assert that Plaintiff cannot establish either that he engaged in a protected activity or that there is a causal link between any protected activity and his termination. (Defs. Mot. Summ. J. 6.)

B.      Prima Facie Evidence of Plaintiff's Protected Activity under the WPA

The activity protected by the WPA is defined in the statute:

No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
**A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States;
**B.** The employee, acting in good faith, or a person acting on behalf of the employee, reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual. The protection from discrimination provided in this section specifically includes school personnel who report safety concerns to school officials with regard to a violent or disruptive student;
...
**D.** The employee acting in good faith has refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States or that would expose the employee or any individual to a condition that would result in serious injury or death, after having sought and been unable to obtain a correction of the illegal activity or dangerous condition from the employer; or

26 M.R.S. § 833(A)-(B), (D). Thus, the WPA protects "(1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by that employer." *Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 18, 87 A.3d 704 (internal citation omitted).

Defendants argue that Plaintiff's alleged complaints are not protected by the WPA for three reasons: (1) Plaintiff's complaint to Ms. MacDonald does not qualify for WPA protection

5

because she was a receptionist, not his supervisor; (2) Plaintiff's complaint to Mr. MacDonald did not allege any violation of rules or laws or that the safety of any individual was in jeopardy; and (3) Plaintiff's complaints were not in good faith because Plaintiff has allegedly conceded under oath that he did not think he was placing customers in jeopardy and because Plaintiff certified to the State that he had received sufficient training to be licensed. (Defs. Mot. Summ. J. 6-7.)

In support of their argument, Defendants assert Plaintiff made only two complaints. (Defs. Supp. S.M.F. ¶¶ 24, 29, 31.) Plaintiff complained to Ms. MacDonald, a receptionist, that he was not getting property training, that Mr. MacDonald was never around when Plaintiff need help, that "safety issues were coming into play" because Plaintiff did not know how to make some adjustments, and that he was never going to pass the practical part of the licensure exam without Mr. MacDonald's training. (*Id.* ¶ 26.) A week later, Plaintiff complained to Mr. MacDonald that he did not have the right equipment for his practical exam for licensure, that he needed Mr. MacDonald's help, and that he should not have been doing any adjustments or selling hearing instruments without Mr. MacDonald present, and that he was not going to conduct any more sales or adjustments without Mr. MacDonald present. (*Id.* ¶¶ 29-30.)

Defendants assert that, in April 2014, Plaintiff completed a Verification of Trainee Practicum form representing to the State that he had received the required training for licensure by the State. (*Id.* ¶ 22.) Defendants also assert that Plaintiff conceded at deposition that he continued to treat customers and make adjustments after complaining to Mr. MacDonald and that he would not have done so if he thought it was unsafe. (*Id.* ¶ 28.)

In response, Plaintiff asserts that, in December 2013, Mr. MacDonald signed a BSAH form attesting to the following: that he would supervise Plaintiff's training, that he understood Plaintiff may not perform the tasks of a hearing aid dealer and fitter; that he was legally and

ethically responsible for the work of a trainee under his supervision; and that he understood the rules pertaining to direct supervision and permissible tasks under BSAH's laws and regulations. (Pl. Add'l S.M.F. ¶¶ 14-15, 17.) Mr. MacDonald testified at deposition that the permissible tasks of a hearing aid dealer and fitter included hearing testing, hearing aid fitting, impressions, adjusting hearing aids, programing hearing aids, and selling hearing aids. (*Id.* ¶ 18.) Mr. MacDonald admitted at deposition that Plaintiff could not make sales or service hearing aids without him present. (*Id.* ¶¶ 23-24.) Mr. Case also testified at deposition that, under the regulations in Maine, Plaintiff could not test, fit, dispense, or sell hearing aids without Mr. MacDonald present. (*Id.* ¶¶ 22-23, 27.)

Plaintiff asserts that he complained to Mr. MacDonald that he needed supervision, that he would no longer dispense hearing aids without Mr. MacDonald present, and that he should not be selling hearing instruments or making adjustments with Mr. MacDonald present. (Pl. Opp. S.M.F. ¶ 30; Pl. Add'l S.M.F. ¶¶ 64-65.) Plaintiff also testified at deposition that he was not sure if he continued to see customers after complaining to Mr. MacDonald because he was terminated shortly after making his complaints. (Pl. Opp. S.M.F. ¶ 28.) Plaintiff further asserts that he believed, in good faith, that Mr. MacDonald's conduct violated BSAH regulations and state laws regarding the supervision of a trainee and endangered customers. (Pl. Opp. S.M.F. ¶ 30; Pl. Add'l S.M.F. ¶ 66.)

Based on the foregoing, Plaintiff has put forth sufficient evidence that he engaged in a protected activity under the WPA. Based on the proffered evidence, a fact finder could conclude that Plaintiff made a good faith report to his supervisor, Mr. MacDonald, that his continued selling, fitting, dispensing, and adjusting of hearing aids without Mr. MacDonald present was a violation of BSAH regulations and created a risk to customer safety. A fact finder could also conclude that Plaintiff, acting in good faith, refused to make any further

7

adjustments or sales of hearing aids without Mr. MacDonald present. Therefore, Plaintiff has made a prima facie showing that he engaged in a protected activity.

C.    Prima Facie Evidence of a Causal Link

Regarding the causal link element of Plaintiff's retaliation claim, "[a] causal connection exists when the alleged retaliation was a substantial, even though perhaps not the only, factor motivating the adverse employment action." *Brady*, 2015 ME 143, ¶ 16, 126 A.3d 1145 (internal citation and quotation marks omitted).

On summary judgment, "the court may consider any and all evidence that tends to show a causal link, even if that evidence would also be relevant to show pretext at the third stage of the *McDonnell Douglas* framework." *Id.* Evidence of communication channels between the subject of the employee's protected activity and the ultimate decision-maker and temporal proximity between the protected activity and the adverse employment action may also support a finding of a causal link. *Id.* ¶¶ 17, 21, 23. First, where there is no direct evidence that the ultimate decision-maker knew of the employee's protected activity, a fact finder can infer that the ultimate decision-maker would have likely learned of the employee's complaint based on evidence of direct communication channels between the subject of plaintiff's complaint and the decision-maker. *Id.* ¶¶ 17, 21. Second, the temporal proximity of an employer's awareness of an employee's protected activity and the alleged retaliatory action is also prima facie evidence of a causal link. *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 21, 45 A.3d 722. The court looks to the "combined effect" of all the evidence in determining whether Plaintiff has produce sufficient prima facie evidence of a causal link. *Brady*, 2015 ME 143, ¶ 17, 126 A.3d 1145.

In their motion for summary judgment, Defendants assert there is no evidence of a causal link between Plaintiff's complaint and his termination because Mr. MacDonald played no

role in Plaintiff's termination. (Defs. Mot. Summ. J. 8.) Defendants assert that Mr. Case made the decision to terminate Plaintiff for lack of sales. (Defs. Supp. S.M.F. ¶¶ 32-33.) Defendants assert that Mr. Case had no knowledge of Plaintiff's complaint to Mr. MacDonald. (*Id.* ¶ 34.)

In response, Plaintiff asserts that Mr. MacDonald reported directly to Mr. Case and that Mr. MacDonald and Mr. Case had weekly conference calls on Wednesdays. (Pl. Add'l S.M.F. ¶¶ 6-7.) Plaintiff complained to Ms. MacDonald sometime in May 2014. (Pl. Add'l S.M.F. ¶ 46; Defs. Reply S.M.F. ¶ 46.) Plaintiff asserts that he complained to Mr. MacDonald about a week later. (*Id.* ¶ 62.) Plaintiff was terminated on the afternoon of May 29, 2014. (*Id.* ¶ 73.)

Plaintiff avers that Mr. MacDonald mentioned something about sales as the reason for his termination. (*Id.*) According to Plaintiff, there was never any expectation as to how many sales he should have made and that no ever spoke to him about his sales during his employment. (*Id.* ¶¶ 70-71.) Plaintiff asserts that he questioned Mr. MacDonald about the reason of Plaintiff's termination, telling Mr. MacDonald that he was not even supposed to be selling hearing aids without Mr. MacDonald present. (*Id.* ¶ 75.) Plaintiff asserts that Mr. MacDonald told Plaintiff that he had been involved in the decision to terminate him. (*Id.* ¶ 76.) Plaintiff asked Mr. MacDonald if the decision to terminate his employment stemmed from his refusal to dispense or sell hearing aids without more training or direct supervision. (*Id.* ¶ 77.) Mr. MacDonald did not respond to Plaintiff's question. (*Id.* ¶ 78.)

Plaintiff has proffered evidence of a regular channel of communication between Mr. MacDonald and Mr. Case, based upon which a fact finder could infer that Plaintiff's complaint to Mr. MacDonald likely could have been communicated to Mr. Case. Plaintiff has also set forth evidence of temporal proximity between his complaint to Mr. MacDonald sometime in May 2014 and his termination on May 29, 2014. Plaintiff has also set forth evidence based on

which a factfinder could decide that the proffered reason for his termination—lack of sales—was a pretext for his termination: according to Plaintiff, there was no expectation for him to make a certain number of sales, no one had discussed his lack of sales with him, nor was he permitted to make sales on his own as a trainee.

Based on the foregoing, Plaintiff has presented evidence that a factfinder could accept as sufficient to establish a causal link between his protected activity and his termination.

*III. Conclusion*

Based on the entirety of record, the court concludes that there are genuine issues of material fact regarding whether Plaintiff engaged in protected activity and the existence of a causal link between the protect activity and his termination. Therefore, Defendants are not entitled to summary judgment.

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

The Motion for Summary Judgment of Defendants Custom Hearing, LLC (d/b/a Miracle Ear, LLC) and Frasier Enterprises is denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated July 6, 2016

A.M. Horton
Justice, Superior Court

10