IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 29, 2008

Charles R. Fulbruge III
Clerk

No. 08-40122
Summary Calendar

MARION CREWS

Plaintiff-Appellant

V.

THE DOW CHEMICAL COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:07-CV-107

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Marion Crews ("Crews") was a Resource Leader for Dow Chemical Company ("Dow"). Crews was responsible for determining which employees should staff a project, reviewing employees, setting salary recommendations, and directing assignments. Crews consistently received strong performance evaluations and was expected to laterally transfer to a Dow position in Europe. However, Crews's human resources business partner, Tom

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Hutson, noticed that Crews displayed hand tremors, slurred speech, and decreased engagement at meetings. Crews's supervisor, Margaret Walker, also noticed unusual behavior from Crews, including: inability to make organized arguments concerning topics she was very knowledgeable about; discussing improper topics during work-related meetings; missing or failing to cancel meetings; and difficulty in using routine office equipment. Accordingly, Dow notified Crews that her work duties were restricted until she completed a fitness-for-duty assessment by independent medical physicians. Such restrictions included restricted access to Dow's premises, e-mail, and verbal communications. Crews continued to receive full pay and benefits and was informed that her "sole work priority" was to cooperate with Dow Health Services.

On March 16, 2006, upon receiving written notice of the required fitness-for-duty assessment, Crews filed a complaint with the Equal Employment Opportunity Commission, alleging disability-based discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Four days later, Crews told a Dow physician that she wanted to pursue long-term disability benefits and admitted that she was being treated for depression and bipolar disorder via a complex prescription medication regime. Crews presented a certification from her personal physician and, pursuant to her own request, was placed on full-time paid medical leave under the Family and Medical Leave Act ("FMLA"). When the FMLA leave expired, Crews continued to receive pay and benefits from Dow.

Crews then applied for long-term disability and Social Security benefits. Crews submitted documentation from her personal physician, stating: "I do not believe [Crews] will be able to return to her previous job." On September 27, 2006, when Crews began receiving long-term disability benefits, she ceased to be a Dow employee and no longer received payment from Dow. Every two to

three months, Crews's personal physician re-certifies that Crews will not be able to return to work in the "foreseeable future."

Crews sued Dow alleging, inter alia, discrimination in violation of the ADA based upon her physical impairment of severe hand tremors. Specifically, Crews alleges that Dow discriminated against her by: (1) restricting her access to work premises and e-mail; (2) cancelling her transfer to Europe; and (3) terminating her employment. The district court granted Dow's motion for summary judgment, finding that Dow did not discriminate against Crews because she cannot simultaneously receive long-term disability benefits and remain an employee of Dow. Crews now appeals.

We review de novo the district court's grant of summary judgment. Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997). Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997).

Under the ADA, an employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine whether someone is a qualified individual, we must determine "whether the individual could perform the essential functions of the job" and, if not, determine "whether any reasonable accommodation by the

employer would enable him to perform those functions." Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993).

Where a "qualified individual with a disability" relies upon circumstantial evidence to establish unlawful discrimination under the ADA, we apply the well-known McDonnell Douglas burden-shifting framework. See McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000). "Under this framework, a plaintiff must first make a prima facie showing of discrimination by establishing that: (1) [h]e is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." Id. at 279-80. "Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. at 280. Then, the burden "shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Id.

We find that Crews did not suffer unlawful discrimination when Dow restricted her access to work premises and e-mail and cancelled her transfer to Europe pending completion of a fitness-for-duty assessment. Even assuming arguendo that Crews established a prima facie case, Dow articulated a legitimate, non-discriminatory rationale for requiring Crews to undergo a fitness-for-duty assessment–namely, the changes in Crews's workplace behavior noticed by Hutson and Walker. Dow reasonably could have found that such changes might impair Crews's performance as a Resource Leader.[1] Based on the summary judgment record, Crews has not established that this rationale was pretextual. Therefore, Crews has not established a violation of the ADA.

---

[1] It bears noting that Crews's behavioral changes are distinct from her severe hand tremors–the basis of her disability claim.

4

Regarding Crews's termination, which occurred upon her receipt of long-term disability benefits, we find that Crews is not a "qualified individual with a disability" under the ADA. According to her own physician, Crews cannot return to work in the forseeable future. Thus, Crews cannot perform the essential functions of her job, with or without reasonable accommodation. As the district court found, receipt of long-term disability benefits and Social Security benefits means that Crews is unable to perform her job.[2] Crews cannot claim incapacity to work for these purposes and then claim capacity to work for purposes of the ADA. Accordingly, as of her receipt of long-term disability benefits, Crews is not a "qualified individual with a disability" under the ADA and the district court properly granted summary judgment in favor of Dow.

AFFIRMED.

---

[2] An individual is entitled to Social Security benefits "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).