FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

May 29, 2014

**UNITED STATES COURT OF APPEALS**

Elisabeth A. Shumaker

**TENTH CIRCUIT**

Clerk of Court

GRACE HWANG,

  Plaintiff - Appellant,

v.

KANSAS STATE UNIVERSITY,

  Defendant - Appellee.

No. 13-3070

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:11-CV-04185-EFM-KMH)**

Luanne C. Leeds of Leeds Law, LLC, Topeka, Kansas, for Plaintiff-Appellant.

Peter J. Paukstelis, Office of General Counsel, Kansas State University, Manhattan, Kansas, for Defendant-Appellee.

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Must an employer allow employees more than six months' sick leave or face liability under the Rehabilitation Act? Unsurprisingly, the answer is almost always no.

By all accounts, Grace Hwang was a good teacher suffering a wretched year. An assistant professor at Kansas State University, she signed a written one-year contract to teach classes over three academic terms (fall, spring, and summer). But before the fall term began, Ms. Hwang received news that she had cancer and needed treatment. She sought and the University gave her a six-month (paid) leave of absence. As that period drew to a close and the spring term approached Ms. Hwang's doctor advised her to seek more time off. She asked the University to extend her leave through the end of spring semester, promising to return in time for the summer term. But according to Ms. Hwang's complaint, the University refused, explaining that it had an inflexible policy allowing no more than six months' sick leave. The University did arrange for long-term disability benefits, but Ms. Hwang alleges it effectively terminated her employment. In response, she filed this lawsuit contending that by denying her more than six months' sick leave the University violated the Rehabilitation Act. Failing to see how this much followed, the district court dismissed her complaint and it is this ruling Ms. Hwang now asks us to reverse.

The Rehabilitation Act prohibits recipients of federal funding, like Kansas State, from discriminating on the basis of disability. 29 U.S.C. § 794(a). One way a disabled plaintiff can establish a claim for discrimination in the workplace is by showing that she is qualified for her job; that she can perform the job's essential functions with a reasonable accommodation for her disability; and that

her employer failed to provide a reasonable accommodation despite her request for one. Once a plaintiff can show all these things, an employer generally may avoid liability only if it can prove the accommodation in question imposes an undue hardship on its business. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1177 & n.2 (10th Cir. 2012); *see also* 29 U.S.C. § 794(d); *Alexander v. Choate*, 469 U.S. 287 (1985); *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

When it comes to satisfying her elemental obligations, Ms. Hwang's complaint fails early on. There's no question she's a capable teacher, no question she's disabled within the meaning of the Act. But there's also no question she wasn't able to perform the essential functions of her job even with a reasonable accommodation. By her own admission, she couldn't work at any point or in any manner for a period spanning more than six months. It perhaps goes without saying that an employee who isn't capable of working for so long isn't an employee capable of performing a job's essential functions — and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation. After all, reasonable accommodations — typically things like adding ramps or allowing more flexible working hours — are all about enabling employees to work, not to not work. *See* 42 U.S.C. § 12111(9); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122-24 (10th Cir. 2004); *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1168 (10th Cir. 2003); *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001) ("The idea of accommodation is to

enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by . . . eliminating an essential function of the job.").

Of course, an employee who needs a brief absence from work for medical care can often still discharge the essential functions of her job. Likewise, allowing such a brief absence may sometimes amount to a (legally required) reasonable accommodation so the employee can proceed to discharge her essential job duties. After all, few jobs require an employee to be on watch 24 hours a day, 7 days a week without the occasional sick day. And no one suggests anything like such unrelenting presence at her post was necessary for Ms. Hwang to fulfill the essential job functions of a teacher at Kansas State. *See, e.g.*, *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1218 (10th Cir. 2012); *Boykin v. ATC/VanCom of Colo., L.P.*, 247 F.3d 1061, 1064-65 (10th Cir. 2001); *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996).

What separates an absence that enables an employee to discharge the essential duties of her job — and may even amount to a legally compelled reasonable accommodation — from an absence that renders the employee unable to discharge those essential duties and isn't a reasonable accommodation? The answer usually depends on factors like the duties essential to the job in question, the nature and length of the leave sought, and the impact "on fellow employees." *US Airways*, 535 U.S. at 400. Taking extensive time off work may be more

problematic, say, for a medical professional who must be accessible in an emergency than for a tax preparer who's just survived April 15.

Still, it's difficult to conceive how an employee's absence for six months — an absence in which she could not work from home, part-time, or in any way in any place — could be consistent with discharging the essential functions of most any job in the national economy today. Even if it were, it is difficult to conceive when requiring so much latitude from an employer might qualify as a *reasonable* accommodation. Ms. Hwang's is a terrible problem, one in no way of her own making, but it's a problem other forms of social security aim to address. The Rehabilitation Act seeks to prevent employers from callously denying reasonable accommodations that permit otherwise qualified disabled persons to work — not to turn employers into safety net providers for those who cannot work. *See, e.g.*, *Boykin*, 247 F.3d at 1065 (six months' leave is beyond a "reasonable amount of time"); *Robert*, 691 F.3d at 1218 ("[T]he Eighth Circuit ruled in an analogous case that a six-month leave request was too long to be a reasonable accommodation."); *see also US Airways*, 535 U.S. at 399-401.

Ms. Hwang insists we have to hold otherwise because all "inflexible" sick leave policies, even ones granting as long as six months' leave, necessarily violate the Rehabilitation Act. In support of her argument, she directs us to this sentence from an EEOC guidance manual:

> If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no-fault" leave policy to provide the employee with the additional leave, unless it can show that: (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship.

EEOC, No. 915.002, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (2002), *available at* 2002 WL 31994335, at *15.

Ms. Hwang's argument here quickly confronts its problems. In the first place, the EEOC manual commands our deference only to the extent its reasoning actually proves persuasive. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 n.6 (2002); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 n.16 (10th Cir. 2011). And the sentence Ms. Hwang cites doesn't seek to persuade us of much. It indicates that an employer "must" modify a leave policy if the employee "needs" a modification to ensure a "reasonable accommodation" — that is, unless two listed conditions are met. But none of this answers the antecedent question we face in this case: When *is* a modification to an inflexible leave policy legally necessary to provide a reasonable accommodation?

On top of that, flipping through the EEOC manual reveals that when it turns more directly to the question presented in our case it speaks in a way distinctly unhelpful to Ms. Hwang. A few pages later the agency expressly states that an employer does *not* have to retain an employee unable to perform her

- 6 -

essential job functions for six months just because another job she can perform will open up then. An employer doesn't have to do so much, the EEOC says, "because six months is beyond a reasonable amount of time." EEOC, *supra*, at *21 (quotation marks omitted). Here then the EEOC seems to agree with our conclusion that holding onto a non-performing employee for six months just isn't something the Rehabilitation Act ordinarily compels.

Ms. Hwang appears to read the EEOC sentence she cites in a very different way. In her view, it suggests an employer must *always* modify a leave policy unless one of two enumerated conditions is met — unless an alternative accommodation would be effective or the requested leave modification would constitute undue hardship. But the language of the sentence clearly indicates that these two enumerated conditions come into play only *after* it's clear the leave policy modification *is* a reasonable accommodation necessary to ensure the employee can perform his essential job functions. Indeed, the enumerated conditions discuss an affirmative defense and remedial measures — issues that arise only after the plaintiff establishes liability. The second condition acknowledges that an employer may pursue an undue hardship affirmative defense even when the plaintiff has met her burden of proof. *See* 42 U.S.C. § 12112(b)(5)(A). The first condition makes the point that an employer isn't compelled to modify its leave policy when other effective and reasonable accommodations exist because normally the right to choose among effective

- 7 -

remedial accommodations rests with the employer.  *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177-78 (10th Cir. 1999) (en banc); 29 C.F.R. Pt. 1630 app. § 1630.9.[1]

Neither is there anything inherently discriminatory in the fact the University's six-month leave policy is "inflexible," as Ms. Hwang would have us hold.  To the contrary, in at least one way an inflexible leave policy can serve to protect rather than threaten the rights of the disabled — by ensuring disabled employees' leave requests aren't secretly singled out for discriminatory treatment, as can happen in a leave system with fewer rules, more discretion, and less transparency.  In rejecting the notion that inflexible seniority policies necessarily discriminate against the disabled, the Supreme Court has noted that they can "provide[] important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment," introduce "an element of due process," and limit potential "unfairness in personnel decisions."  *US Airways*, 535 U.S. at 404 (internal quotation marks omitted).  All the Court said there about inflexible seniority policies might be just as easily said here about inflexible leave policies.

---

[1] To the extent the first condition might be read to suggest an employer must provide an "effective" leave policy modification even if such a policy wouldn't be a "reasonable" accommodation in the mine run of cases, that would contradict the Supreme Court's holding in *US Airways*.  535 U.S. at 399-402 (rejecting the notion "that the statutory words 'reasonable accommodation' mean only 'effective accommodation'").

- 8 -

This isn't to suggest inflexible leave policies are categorically immune to attack. Policies providing unreasonably short sick leave periods, for example, may not provide accommodation enough for employees who are capable of performing their jobs' essential functions with just a little more forgiven absence. Likewise, if it turns out that an employer's supposedly inflexible sick leave policy is really a sham and other employees are routinely granted dispensations that disabled employees are not, an inference of discrimination will naturally arise. *See US Airways*, 535 U.S. at 405; *Rascon v. U S West Commc'ns, Inc.*, 143 F.3d 1324, 1334-35 (10th Cir. 1998), *overruled on other grounds by New Hampshire v. Maine*, 532 U.S. 742 (2001). But the leave policy here granted all employees a full six months' sick leave — more than sufficient to comply with the Act in nearly any case — and Ms. Hwang makes no allegations suggesting unequal enforcement of the policy's terms.

The closest Ms. Hwang comes to that is this. Some University employees, she says, are eligible to receive not only six months' sick leave but sabbaticals lasting up to a year — and she says she wasn't allowed one of those. But to raise the specter of discrimination through disparate treatment a plaintiff must allege facts suggesting non-disabled — but otherwise similarly situated — employees receive more favorable treatment. And this Ms. Hwang has not done. She has pleaded no facts about the non-disabled University employees who receive sabbaticals, let alone facts suggesting they are like her in any relevant way. We

have no facts suggesting, for example, that sabbatical-eligible employees include untenured faculty on year-to-year contracts like Ms. Hwang. Or that sabbaticals are given out to those with roughly the same seniority as Ms. Hwang. For all we know from Ms. Hwang's complaint, year-long sabbaticals at Kansas State are reserved for long-serving tenured faculty, not annual contract teachers like herself. To be sure, Ms. Hwang's complaint says she's "similarly situated" to employees who get sabbaticals. But that's just a legal conclusion — and a legal conclusion is never enough. While plaintiffs don't have to incant any particular litany of facts to support a claim of differential treatment, they *do* have to allege some set of facts that taken together plausibly suggest differential treatment of similarly situated employees. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193-94 (10th Cir. 2012); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

Beyond Ms. Hwang's various discrimination claims lies one for unlawful retaliation. We've long explained that the Rehabilitation Act prohibits not just discrimination on the basis of disability but retaliation against those who report disability discrimination. *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007). But the retaliation theories Ms. Hwang presents fail as a matter of law and for reasons that can be illustrated a good deal more briefly.

Take these two examples. First, Ms. Hwang alleges that the University failed to explain her post-employment health benefits under COBRA before or

immediately after her termination. By statute, though, an employer has thirty days to supply a COBRA notice. 29 U.S.C. § 1166(a)(2); *see also* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82. And whether or not the University fulfilled its COBRA obligation *immediately*, Ms. Hwang doesn't contend it failed to act within the statutory period.[2] Second, Ms. Hwang says that after losing her teaching job she unsuccessfully applied for two other positions at Kansas State — special assistant to the president for community relations and interim associate provost for international programs — and invites us to conclude a retaliatory intent was in play. But here (again) we're given no facts suggesting the University acted with unlawful animus, no facts suggesting it declined to hire Ms. Hwang because she had engaged in legally protected opposition to discrimination. Ms. Hwang doesn't offer any facts suggesting how she was qualified for these jobs, let alone as qualified as other applicants. She doesn't offer any facts suggesting that the University officials who decided not to hire her knew about her disability. Or about her past opposition to discrimination. Without some facts plausibly suggesting that it was because of her discrimination complaint (or disability) that Ms. Hwang wasn't

---

[2] Early on in this appeal the University filed a motion asking us to sanction Ms. Hwang's attorney for knowing misrepresentations about its provision of COBRA benefits. Happily, at oral argument the University agreed to withdraw the motion so we have no occasion to rule on it.

hired for these jobs, her retaliation claim, like her disability claim, cannot escape a motion to dismiss. *See Khalik*, 671 F.3d at 1194.

Affirmed.