**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2929
_____

M. DENISE TOLLIVER,
                              Appellant

v.

TRINITY PARISH FOUNDATION; DELAWARE
FUTURES, INC.; PATRICIA DOWNING; MAILE STATUTO
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-14-cv-01021)
District Judge: Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2018
Before: SHWARTZ, KRAUSE, and FISHER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 26, 2018)
_____

OPINION*
_____

PER CURIAM

Denise Tolliver appeals from orders of the District Court granting summary

judgment to the defendants and denying reconsideration. For the reasons that follow, we

will affirm.

Tolliver was employed by Delaware Futures, Inc. ("DFI") as its Executive Director.[1]  Beginning on February 23, 2013, she took a medical leave of absence, informing DFI's Board of Directors of her leave via email.  Tolliver was granted short-term disability leave through DFI's insurer, Hartford Insurance Company.  On March 6, 2013, Evette Houston, whom Tolliver had placed in charge when she took her leave of absence, was appointed Acting Executive Director of DFI.  At about the same time, DFI became aware that Tolliver had continued to work on at least one DFI matter.  Regarding this work as "unauthorized" insofar as she was on medical leave, DFI cancelled or suspended Tolliver's access to company email and arranged with Trinity Episcopal Parish to have the locks changed on the building where DFI was located.  Tolliver strenuously objected to both actions but, nonetheless, was not ready to return to work.  Instead, DFI was provided with her caregiver's statement, dated February 28, 2013, which stated that her work limitations would tentatively last until March 8, 2013.

Tolliver did not return to work in March 2013.  On April 1, 2013, DFI Board President Bruce Kallos, now deceased, wrote to Tolliver, advising her that he needed to know how long she expected to be on medical leave.  He asked her to provide a note from her treating physician containing this information: (1) the nature of her medical condition; (2) her medical limitations; and (3) the length of time those limitations were expected to continue.  Kallos followed up with an email to Tolliver, clarifying that DFI was entitled to the information requested and did not want to access her confidential medical information beyond the requested information.  In response to Kallos' demand for this information, on April 3, 2013, Tolliver submitted a written grievance to DFI's

---

[1] Because we write primarily for the parties, who are familiar with the facts and procedural history, we will not recite them except as necessary to our discussion.

Executive Committee, in which she complained, in pertinent part, that Kallos' request amounted to harassment, given that DFI representatives had been in contact with their disability insurer and were aware of the nature of her disability. Nevertheless, on April 9, 2013, Tolliver's doctor provided a note stating that Tolliver was unable to return to work until July 1, 2013, providing at least some of the information sought by Kallos.

On April 19, 2013, Board Member Maile Statuto responded to Tolliver's grievance on behalf of the Board's Personnel Committee, stating that the Executive Committee had reviewed her complaint of harassment and found it to be without merit. Tolliver, in a response dated May 6, 2013, then made several new demands and asked DFI to supplement her disability payments by continuing her salary. By letter dated May 13, 2013, Statuto replied and explained the reasons why Tolliver's allegations had been found to have no merit and further explained that it was not DFI's policy to continue to pay an employee's salary while that employee was receiving short-term disability payments. Tolliver wrote a final letter to Statuto on May 17, 2013, reiterating prior issues, and alleging a hostile work environment, harassment, and retaliation. She thereafter retained counsel, and all communications were conducted through the parties' attorneys.

On June 20, 2013, Tolliver's counsel sent DFI a letter indicating that she was unable to perform the essential duties of her job as Executive Director. The letter provided no anticipated return to work date, and neither Tolliver nor anyone on her behalf had any further communication with DFI regarding her ability to return to work after July 1, 2013. On July 15, 2013, Kallos notified Tolliver that her employment was terminated. In his letter, he noted that DFI was aware that she had represented to its

3

disability insurer that she continued to be unable to work for medical reasons and that, in the opinion of her treating physicians, her situation would continue indefinitely.[2] Kallos stated that DFI could not grant her an indefinite leave of absence. On September 15, 2013, Houston was selected to replace Tolliver.[3]

Following her termination, Tolliver filed suit in the United States District Court for the District of Delaware against DFI, Trinity Parish Foundation, Inc., Statuto, and Reverend Patricia Downing, head of Trinity Parish. Tolliver asserted these counts in her second amended complaint:

> Count I against Trinity Parish and DFI alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. Code §§ 710, et seq.;
>
> Count II against all defendants alleging race discrimination in violation of 42 U.S.C. § 1981;
>
> Count III against Trinity Parish and DFI alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the DDEA;
>
> Count IV against all defendants alleging retaliation in violation of Title VII, the ADEA, and the DDEA;
>
> Count V against Reverend Downing and Statuto alleging civil rights violations under 42 U.S.C. § 1983;
>
> Count VI against Trinity Parish and DFI alleging civil rights violations under 42 U.S.C. § 1983;
>
> Count VII against Trinity Parish and DFI alleging wrongful termination and breach of contract;

---

[2] Tolliver was transitioned to long-term disability on May 27, 2013, and continued to receive benefits through August 27, 2013.

[3] Houston held the position of Executive Director until her resignation on September 1, 2016.

4

Count VIII against all defendants alleging intentional infliction of emotional distress;

Count IX against all defendants alleging violations of the whistleblower provisions of the Sarbanes-Oxley Act 18 U.S.C. § 1514A, as set forth in the Delaware Whistleblower's Protection Act, 19 Del. Code §§ 1701-08, et seq.;

Count X against all defendants alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 and § 1141;

Count XI against all defendants alleging defamation;

Count XII against all defendants alleging disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq.;

Count XIII against DFI alleging violations of confidentiality and invasion of privacy; and

Count XIV against Trinity Parish and Reverend Downing for tortious interference.

After Tolliver was deposed, the defendants moved for summary judgment, Fed. R. Civ. 56(a). The District Court, in an order entered on August 2, 2017, granted that motion, explaining its reasoning in a thorough opinion addressing each count in Tolliver's second amended complaint, see Tolliver v. Trinity Parish Foundation, Inc., 2017 WL 3288119 (D. Del. August 2, 2017). In an order entered on September 5, 2017, the District Court denied Tolliver's timely filed motion for reconsideration.

Tolliver appeals. We have jurisdiction under 28 U.S.C. § 1291. In her amended pro se brief, Tolliver contends that the District Court took three years to decide her civil action, causing her prejudice; that the District Court favored the defendants' version of the facts in deciding the summary judgment motion; that the District Court was biased against her; and that her claims of disability and age discrimination, retaliation, and breach of an implied covenant of good faith and fair dealing presented genuine factual

5

issues for trial. These are the only contentions we will review; all other claims and issues are deemed forfeited. See Laborers' International Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (issue is waived unless party raises it in opening brief; passing reference to issue will not suffice to bring that issue before this Court).[4]

We will affirm. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the summary judgment record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The District Court is required to view the facts in the light most favorable to the non-moving party and make all reasonable inferences in her favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Ultimately, however, a court should grant summary judgment where the non-movant's evidence is merely colorable or not significantly probative, id. at 249-50, because, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks removed).

---

[4] Moreover, we will affirm the District Court's determination, without further discussion, that Tolliver's breach of an implied covenant of good faith and fair dealing claim did not present a triable issue, and thus that summary judgment in favor of the defendants was proper on this Count.

In awarding summary judgment to the defendants on Tolliver's age and disability discrimination claims under Title VII, § 1981, Delaware law, and the Rehabilitation Act, the District Court noted and applied the appropriate legal standards. The Court reviewed the summary judgment evidence and concluded that a trial on Tolliver's claims was not warranted. Our review *de novo* of the summary judgment record leads us to the same conclusion. See Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007) (appellate court reviews district court's grant of summary judgment *de novo*). We write primarily to address Tolliver's Title VII and Rehabilitation Act claims of discrimination and retaliation.

Tolliver alleged that DFI terminated her due to her age and her disability and retaliated against her for engaging in protected activity. Tolliver would have to prove at trial that DFI's reason for terminating her was a pretext for discrimination, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), or provide other evidence of discrimination, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509-11 (1993). She had to either discredit DFI's proffered reasons for terminating her or show that discrimination was more likely than not a cause of her termination. Cf. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (addressing summary judgment standard). The summary judgment record establishes that, when Tolliver's authorized medical leave ended on July 1, 2013, she failed to return to work. Moreover, her attorney advised DFI's Board that she was receiving long-term disability benefits, and further represented to the Board that Tolliver was unable to perform the essential duties of her job as Executive Director. None of the summary judgment evidence shows or suggests that Tolliver ever asked to return to work and/or asked for and was denied a work-related accommodation, notwithstanding her

7

contentions to the contrary, see Appellant's Pro Se Brief, at 4. Tolliver was never able to identify a date by which she would be capable of performing all essential functions of her job as Executive Director, nor she did ask for an accommodation relating to her duties. These undisputed facts establish for purposes of summary judgment that DFI's reason for terminating her was not a pretext for age or disability discrimination. Specifically with respect to Tolliver's claim of disability discrimination, a leave of absence, as a general matter, may be a reasonable accommodation, but an indefinite leave of absence is not. See Hwang v. Kansas State University, 753 F.3d 1159, 1161-62 (10th Cir. 2014) ("[A]n employee who isn't capable of working for [six months] isn't an employee capable of performing a job's essential functions -- and … requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation.").

Attached to Tolliver's opposition to summary judgment is a transcript of a voice mail left by Houston for Tolliver on March 13, 2013. Even if we assume that this item satisfies Rule 56(c)(1)(A), it is insufficient evidence of discrimination. In her voice mail, Houston told Tolliver that she had spoken with Kallos, and, although nothing was "official," he said that he was taking DFI in a different direction that did not include either of them. Houston said that she personally was not interested in "fighting it" because she had a long career ahead of her and was willing to leave DFI behind. She expressed the view that her energy and efforts on behalf of DFI had not been appreciated. This evidence offered by Tolliver that Kallos may have wanted to take DFI "in a different direction," without more, neither undermines DFI's proffered reason for terminating her nor shows that age or disability discrimination was more likely than not a cause of her termination. See Fuentes, 32 F.3d at 764.

8

Tolliver's claim that DFI retaliated against her by firing her after she complained to Statuto about a hostile work environment and after she made a charge of discrimination also fails. Title VII prohibits retaliation by making it unlawful for employers to discriminate against "any individual . . . because [s]he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish retaliation, a plaintiff must proffer evidence to show that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006). To establish causation at the prima facie stage, a plaintiff must introduce evidence about the "scope and nature of conduct and circumstances that could support the inference" of a causal connection. Farrell v. Planter's Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). Tolliver failed to produce evidence of a causal link between her protected activity and her termination.[5] Tolliver's employment was not terminated until (1) she did not return to work after the expiration of her approved leave had expired; and (2) her attorney stated that she was unable to perform the essential duties of her job as Executive Director; and (3) neither Tolliver nor anyone on her behalf had any further communication with DFI regarding her ability to return to work after July 1, 2013. These valid reasons for her termination undermine for summary judgment purposes any claim that her termination

---

[5] Tolliver signed her charge of discrimination directed to the Delaware Department of Labor on July 24, 2013, which was *after* her termination, but in it she stated that she presented her complaint to that agency on June 20, 2013.

was retaliatory. Accordingly, summary judgment for the defendants on the retaliation claim also was proper.

Last, Tolliver contends that the District Court was unfair to her by construing the facts in a light more favorable to the defendants, and that undue delay prejudiced her case. Appellant's Pro Se Brief, at 1-2, 8. We do not agree that the District Court's application of the summary judgment standards was improper here. And, although Tolliver commenced her civil action in August 2014, she amended her complaint a number of times and filed numerous motions, discovery took some time to complete, and her case was at one time referred for mediation. In any event, Tolliver failed to show that she was prejudiced in any way by the District Court's management of her civil action. Accordingly, we reject Tolliver's argument of bias and unfair delay as meritless, even assuming that it might provide an independent basis for reversing an award of summary judgment.

Tolliver's motion for reconsideration was properly denied by the District Court because she did not argue an intervening change in the law, new evidence, or a clear error of law. See Max's Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

For the foregoing reasons, we will affirm the orders of the District Court granting summary judgment to the defendants and denying reconsideration. The appellees' motion to supplement the appendix is granted.